CITY OF CAMBRIDGE *vs.* COUNTY COMMISSIONERS OF MIDDLESEX.

Middlesex.   September 1, 1896. — October 31, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Way — Locating anew — Revision of Determination of County Commissioners.*

The authority given by statute to county commissioners to "determine the boundaries of and locate anew, in substantially its present position," a certain road, includes the authority to make some departure from the old or existing boundaries, but restricts this authority to such changes of boundary as will be comparatively slight.

This court cannot interfere with the determination of county commissioners in locating a way anew, unless they have clearly exceeded their power.

County commissioners were authorized by statute, upon the petition of a certain city, or of the selectmen of two towns named, to "determine the boundaries of and locate anew, in substantially its present position, the road forming the westerly boundary of land now taken or acquired by the city" for the construction of waterworks, and to "change the grades of said road" so that it might be at a proper height above the high-water mark of the works so constructed. The city petitioned the commissioners to proceed under this authority. The road was about two miles long, and varied from thirty to forty feet in width, the part worked for travel being from ten to fifteen feet, wide; it was not much travelled, was connected at each end with other roads, was uneven in its grade, and the boundaries were uncertain; and some portions of it were below the water line of the proposed reservoir. The commissioners enlarged the location to a uniform width of fifty feet, and the worked part of the road to a uniform width of twenty-four feet. *Held,* upon a petition by the city for a writ of certiorari to quash the proceedings of the commissioners, that it could not be said that they had exceeded their power.

PETITION for a writ of certiorari, to quash the proceedings of the county commissioners of Middlesex in determining the boun-

daries of, and locating anew, a certain road in Lexington and Lincoln, under St. 1895, c. 354, § 6.*

The petition alleged that, under the provisions of various statutes, the petitioner was authorized to take certain waters, including the waters of Stony Brook in the towns of Waltham and Weston, and also to take and hold lands necessary for the construction and maintenance of waterworks; that, by virtue of such authority, the petitioner had taken the water of Stony Brook and of its tributaries, including Hobbs Brook in the towns of Lincoln and Lexington; that the petitioner had also taken large areas of land in Waltham, Lincoln, and Lexington, and was constructing its waterworks thereon; that, in the proper construction of such works, it became necessary to change the grade and to discontinue certain parts of roads in Lincoln and Lexington; that thereupon, under the provisions of the statute of 1895, the petitioner petitioned for changes of grades of certain roads, for discontinuance of certain roads or portions thereof, and for determining the boundaries of and locating anew, in substantially its present position, for the purposes above set forth, the road forming the westerly boundary of land taken or acquired by the petitioner for such purposes from the town line between Lincoln and Waltham and the Concord Turnpike; and that thereupon the commissioners proceeded to and did approve the changes of grade of parts of certain roads, discontinued parts of certain ways, and undertook to locate anew the road forming the westerly boundary of land so taken or acquired by the petitioner for such purposes prior to May 9, 1895, from the town

---

* The material portions of this section are as follows: " Said commissioners may, for the purposes aforesaid," (namely, the construction, maintenance, and preservation of aqueducts, dams, reservoirs, storage basins, and other proper works in process of construction under any act authorizing said city to provide a water supply,) "upon the petition of said city of Cambridge or of the selectmen of Lexington or Lincoln, determine the boundaries of and locate anew, in substantially its present position, the road forming the westerly boundary of land now taken or acquired by the city of Cambridge for said purposes, from the town line between Lincoln and Waltham to said Concord Turnpike; and may change the grades of said road within said limits, so that said road may be at a proper height above the high-water mark of any reservoir or storage basin constructed by the city of Cambridge on · adjoining land."

line between Lincoln and Waltham to the Concord Turnpike, all of which proceedings were shown by the records of the commissioners and by a plan of the road undertaken to be located anew, dated August, 1895, and forming part of such records; and prayed for a writ of certiorari for the following reasons.

1. Because, in the proceedings for determining the boundaries and locating anew the road in question, the commissioners had no jurisdiction so to act beyond the point at which a change of grade in the road was necessary, namely, the distance of fifteen hundred feet southerly from Lincoln Street in Lincoln as determined by the commissioners.

2. Because, in the proceedings for determining the boundaries and locating anew the road in question, it appears by the plan that the present boundaries of the road were definite except in such places as breaks appear in the walls or fences, and that in those places alone was there any necessity for a relocation of the boundaries; and that such relocation of boundaries should have been only to the extent of placing the same so as to be substantially in accordance with its present position.

3. Because the commissioners materially increased the width of the road.

4. Because determining boundaries and locating anew in substantially its present position does not in law include or allow a widening of the road from ten to seventeen or more feet, as the commissioners in their order now undertake.

5. Because the commissioners made material changes in the position of the road.

6. Because the commissioners, in attempting to determine the boundaries and locate anew the road, abandoned wholly the limits of the old road, and laid out a new road over the land acquired by the city for water purposes.

7. Because the new location is not substantially in the position of the old road, and the old boundaries have not been determined, but abandoned.

8. Because the commissioners, without authority of law, have ordered the petitioner to take a portion of its land already set apart for water purposes for the further purpose of a road.

9. Because the commissioners under the statute in question were limited in the locating anew of the road in substantially

its present position to the purposes named in the statute, and for such purposes it was not necessary to enlarge the limits or change the position of the road.

10. Because the proceedings of the commissioners, in undertaking to locate anew the road forming the westerly boundary of the land already taken by the city for water purposes, are illegal, unjust, contrary to the statute of 1895, and interfere with vested rights of the city.

The answer of the respondents, after setting forth the preliminary proceedings following the filing of the petition, stated that they "found, as matter of fact, and adjudicated, that the changes of grade, discontinuances, and locating anew hereinafter specified and set forth in their return were necessary and proper for the purposes set forth in the statute"; that, after hearing the parties and their evidence and the arguments of counsel thereon, "they proceeded to find and determine as follows on matters of fact material to the petition:

"That the road from Concord Turnpike to the town line between Lincoln and Waltham is one continuous highway throughout; that in many places on the westerly side of the road steep and rocky hills extend into the location, and nearly to the travelled way; that the location of the road is not of uniform width, and in some places is very narrow; and that the boundaries of the location are irregular and indeterminate, and in many places entirely missing; and that the travelled way is not in the centre of the location, as far as could be determined, and is much wider in some places than in others.

"That twenty-four feet, exclusive of gutters, is a necessary and proper width for the travelled way of the road, which should properly be uniform throughout its entire length; and that fifty feet is necessary and proper for the width of the location, to enable cuts and fills incident to changes in grade of the travelled way to be properly made in a workmanlike manner within the location, and to make the travelled way, when constructed, reasonably safe and convenient throughout its entire length.

"That in many places, and for long distances, the road is adjacent to and might form a part of the embankment of the reservoir proposed to be constructed by the petitioner.

"That in many places the road is below the high-water mark

of the proposed reservoir, and that in such places it is necessary and proper, for the purposes set forth in the statute, that the location should be fifty feet in width, and that the travelled way should be in the centre of the location ; and that the width and position of the travelled way in such places rendered it necessary and proper that the same width of the location and the same width and position of the travelled way should be established in all other parts of the road throughout its entire length.

" That on the road from the Concord Turnpike extending along the portions where it lies below high-water mark of the reservoir, and from there on to the Waltham and Lincoln boundary line, there are rises and falls that exceed in incline three degrees with the horizon.

" That of the parts of the road to be changed in grade, it is reasonable and proper that the city of Cambridge should keep in repair only that part lying between Concord Turnpike and a point fifteen hundred feet southerly of Lincoln Street.

" That the locating anew, as set forth in their return, is in substantially the position of the old road."

The return annexed to the answer set out in detail the changes of grade, discontinuance of ways, and a description of the road as located anew.  An amendment to the answer stated that the respondents " found as a matter of fact, and adjudicated, that the relocation and discontinuances prayed for in the petition of the city of Cambridge were of common convenience and necessity."

Hearing before *Morton,* J., who reported the case for the consideration of the full court, in substance as follows.

The road in question is about two miles in length, and is from thirty to thirty-three feet wide, except at the end near the Concord Turnpike where for a few hundred feet it is forty feet wide, having been widened there some time prior to the passage of St. 1895, c. 354.  It is a country road, not much travelled, with but few houses on it, and is connected at each end with other streets or roads, and is uneven in its grade, varies in its width, and the boundaries are uncertain.  The travelled part of the road is from ten to fifteen feet wide.  On the westerly side are hills and rocky ledges.  The cost of constructing it as ordered by the commissioners would be considerable.

The petitioner has been for the past year, and is now, engaged in the construction of a large reservoir or storage basin on land taken by it under St. 1884, c. 256, and lying easterly of the road and bounded by it.

Between Concord Turnpike and Lincoln Street the surface of the old road for a distance of about fifteen hundred feet, and also of another portion south of Lincoln Street of about twelve hundred feet in length, are below the water line of the proposed reservoir, so that at each place the road would be overflowed when the reservoir was filled to the proposed height. The proposed water line of the reservoir will be from fifty to three hundred feet from the road at these places.

In July and August, 1895, and prior thereto, the petitioner raised the grade of its land, forming a bank for the reservoir. In making this bank small portions of the filling at a few places rolled into the road, but otherwise the boundaries of the old road were not encroached upon. The raising of the grade of the petitioner's land interfered with the drainage of the road, and rendered it wet and muddy in places, making a ditch of it, of which the reservoir embankment formed one side, and the hill to the west of the road the other. In one or more places where the road was in this condition the petitioner filled it in for some fifteen hundred feet, and raised the grade from one to three or four feet, but not up to the grade fixed by the commissioners, which was about two or three feet higher. It did not clearly appear when this filling on the road was done, but some portion of it took place after the order of the commissioners. It would have had to be done in carrying out the order of the commissioners, and it improved the road, though not carried to the height or done as required by the commissioners.

The judge found, if material, that the taking the land of the city for the widening will not injure the remaining land for reservoir purposes ; and that the proposed changes in the courses and width of the road as ordered by the commissioners are not necessary for the purpose of construction, maintenance, and preservation of aqueducts, dams, reservoirs, storage basins, or other works now in process of construction under any act authorizing the petitioner to provide a water supply, but the road itself will be greatly improved thereby, and will assist in

some places in making a somewhat better embankment for the storage basin.

*G. O. Shattuck & G. A. A. Pevey*, for the city of Cambridge.

*G. S. Selfridge*, (*W. H. Coolidge* with him,) for the county commissioners.

*E. I. Smith*, for the towns of Lexington and Lincoln.

ALLEN, J.   By Pub. Sts. c. 49, § 13, when application is made to the county commissioners by a town to locate anew a road within such town, they may for the purpose of establishing the boundary lines of such road, or of making alterations in the course or width thereof, locate it anew.   Under this authority, the commissioners may widen the old road, and may depart entirely from its· boundary lines for short distances, and so much of the old road as is not included within the new lines is thereby discontinued.   *Hobart* v. *Plymouth*, 100 Mass. 159. *Stockwell* v. *Fitchburg*, 110 Mass. 305.   To relocate is the same thing as to locate anew; and under a petition to relocate, the commissioners may widen a road and change its grade, and include within its boundaries new strips of land, and exclude from its boundaries other strips of land.   *Hyde Park* v. *County Commissioners*, 117 Mass. 416.   *Richards* v. *County Commissioners*, 120 Mass. 401.   See also *Lincoln* v. *Commonwealth*, 164 Mass. 1, 9 ; *Taft* v. *Commonwealth*, 158 Mass. 526, 551.

The statute now under consideration (St. 1895, c. 354, § 6) authorized the county commissioners to " determine the boundaries of and locate anew, in substantially its present position," the road in question.   It does not in express terms authorize an alteration in the course or width thereof, but such authority is implied.   The authority to locate anew includes the authority to make some departure from the old or existing boundaries. The limitation to substantially its present position restricts this authority to such changes of boundary as will be comparatively slight.   The county commissioners were authorized to proceed upon the petition of the selectmen of Lexington or Lincoln, as well as of the city of Cambridge.   This is an implied recognition that other interests besides those of the city of Cambridge might be recognized.   Under such a statute much is necessarily left to the judgment and discretion of the commissioners.   This court cannot interfere unless they have clearly exceeded their

power. Their good faith is not impugned. The question is whether the statute should receive so strict a construction as to show that they exceeded their power. On an examination of the various facts which are not in dispute, and of the plans, we are unable to hold that they did. The chief alterations relied on are enlarging the location to a uniform width of fifty feet, and the worked part to a uniform width of twenty-four feet. An increase of travel upon the road was probable. Several other roads entered upon it. Authority to require a change of grade was given in express terms. The old boundaries were irregular and not of uniform width, and in some instances were unknown. Authority is implied to require the worked part of the road to be of reasonable width, having reference to the raising of the grade in some places; and a width of twenty-four feet is not plainly unreasonable. We cannot say that the commissioners exceeded their power.          *Petition dismissed.*